## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE ORTHOMINDS, LLC DATA BREACH LITIGATION, | **Case No. 1:25-CV-01565-JPB**<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.     Plaintiffs Areli Villasenor and Renee Young ("Representative Plaintiffs") bring this Class Action Complaint against Defendant OrthoMinds, LLC ("OrthoMinds" or "Defendant") for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' protected health information and personally identifiable information stored within Defendant information network, including, without limitation, full names, date of birth, and medical information (these types of information, *inter alia*, being thereafter referred to, collectively, as

"protected health information" or "PHI"[1] and "personally identifiable information" or "PII"[2] and collectively as "Private Information").

2.    With this action, Representative Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Representative Plaintiffs and, at least, thousands of others similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendant in November 2024, in which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PHI/PII that was being kept unprotected ("Data Breach").

3.    Representative Plaintiffs further seek to hold Defendant responsible for not ensuring that PHI/PII was maintained in a manner consistent with industry standards, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule (45 CFR, Part 160 and Parts A and E of Part 164), the

---

[1]    Protected health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act. *Inter alia*, PHI includes test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

[2]    Personally identifiable information ("PII") generally incorporates information that can be used to  distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its  face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

HIPAA Security Rule (45 CFR Part 160 and Subparts A and C of Part 164), and other relevant standards.

4.    While Defendant claims to have discovered the breach as early as November 2024, Defendant did not inform victims of the Data Breach until approximately March 20, 2025. Indeed, Representative Plaintiffs and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it.

5.    Defendant acquired, collected, and stored Representative Plaintiffs' and Class Members' PHI/PII. Therefore, at all relevant times, Defendant knew or should have known that Representative Plaintiffs and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PHI/PII.

6.    HIPAA establishes national minimum standards for protecting individuals' medical records and other protected health information. HIPAA, generally, applies to health plans/insurers, healthcare clearinghouses, and those healthcare providers that conduct certain healthcare transactions electronically and sets minimum standards for Defendant's maintenance of Representative Plaintiffs' and Class Members' PHI/PII. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of protected health information and sets limits and conditions on the uses and

disclosures that may be made of such information without customer/patient authorization. HIPAA also establishes a series of rights over Representative Plaintiffs' and Class Members' PHI/PII, including rights to examine and obtain copies of their health records and to request corrections thereto.

7.    Additionally, the HIPAA Security Rule establishes national standards to protect individuals' electronic protected health information created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information.

8.    By obtaining, collecting, using, and deriving a benefit from Representative Plaintiffs' and Class Members' PHI/PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from HIPAA, other state and federal statutes and regulations, and common law principles. Representative Plaintiffs do not bring claims in this action for direct violations of HIPAA but charge Defendant with various legal violations merely predicated upon the duties set forth in HIPAA.

9.    Defendant disregarded the rights of Representative Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiffs' and Class Members' PHI/PII was safeguarded, failing to take available

4

steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, Representative Plaintiffs' and Class Members' PHI/PII was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding Representative Plaintiffs and Class Members in the future. Representative Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

## **PARTIES**

10.    Defendant OrthoMinds, LLC is a Michigan limited liability company with its headquarters and principal place of business located at 6110 McFarland Station Drive, Suite 604, Alpharetta, GA 30004. Representative Plaintiffs have requested from Defendant the true names and capacities of persons or entities, whether individual, corporate, associate, of the named members of the Defendant LLC who are only known to Defendant for purposes of diversity jurisdiction and who may be responsible for some of the claims alleged herein.  Representative Plaintiffs will submit a supplemental filing providing notice of the true names and capacities of the members of the LLC upon receipt of their identities from Defendant which it has agreed to provide.

11.    Plaintiff Arelis Villasenor is an adult individual who at all relevant times has been a citizen and resident of Sonoma County, California.  She is a resident of the State of California and intends to remain domiciled in California.

12.    Plaintiff Renee Young is an adult individual who at all relevant times has been a citizen and resident of Sonoma County, California.  She is a resident of the State of California and intends to remain domiciled in California

## JURISDICTION AND VENUE

13.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.  This Court also has supplemental jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

14.    The Court has general personal jurisdiction over Defendant, because Defendant Orthominds' headquarters and principal place of business is located in Alpharetta, Georgia.  Defendant also conduct substantial business in Georgia related to Representative Plaintiffs and Class Members and has thereby established minimum contacts with Georgia sufficient to authorize this Court's exercise of jurisdiction over Defendant.

6

15.     Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District and Defendant resides in this District.

## REPRESENTATIVE PLAINTIFFS

### *Representative Plaintiff Areli Villasenor*

16.     Representative Plaintiff Areli Villasenor (for purposes of this section, "Plaintiff") is a former patient of Defendant' client, Wow! Smiles, and provided her Private Information to Defendant prior to the Data Breach as a condition of and in exchange for obtaining services from Defendant's client.

17.     As a condition of receiving health care services, Plaintiff was required to provide her Private Information, including her name, social security number, and full health and financial information.

18.     At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

19.     Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have

entrusted her Private Information to Defendant had she known of Defendant's lax data security policies.

20.     Plaintiff took reasonable steps to maintain the confidentiality of her Private Information and relied on Defendant to keep her Private Information confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

21.     Plaintiff received the Notice Letter, by U.S. mail, directly from Defendant, dated March 20, 2025. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties, including her full name, date of birth, and medical information.[3]

22.     As a result of the Data Breach, and at the direction of OrthoMind's Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Notice, changing passwords and resecuring her own computer network, and contacting companies regarding suspicious activity on her accounts. Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

---

[3] *See* https://orthominds.com/notice.html

23.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling her Private Information, which has been compounded by the fact that Defendant still has not fully informed her of key details about the Data Breach's occurrence.

24.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

25.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

26.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff suffered injury from a loss of privacy.

27.    Plaintiff suffered actual injury the moment her Private Information was compromised and stolen by cyber thieves in the Data Breach.

28.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information, in combination with her name, being placed in the hands of unauthorized third parties/criminals. As a result of the Data Breach, Plaintiff is at a

present risk and will continue to be at increased risk of identity theft and fraud for her lifetime.

29.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Representative Plaintiff Renee Young***

30.    Representative Plaintiff Renee Young (for purposes of this section, "Plaintiff") is a customer of Defendant's client, Wow! Smiles and provided her Private Information to Defendant prior to the Data Breach as a condition of and in exchange for obtaining services from Defendant's client.

31.    As a condition of receiving health care services, Plaintiff was required to provide her Private Information to Defendant prior to the Data Breach as a condition of and in exchange for obtaining services from Defendant' client.

32.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its network systems with inadequate data security, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

33.    Plaintiff greatly values her privacy and is very careful about sharing her sensitive Private Information. Plaintiff diligently protects her Private Information and stores any documents containing Private Information in a safe and secure

location. She has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have provided her Private Information to Defendant had she known it would be kept using inadequate data security and vulnerable to a cyberattack.

34.     Plaintiff took reasonable steps to maintain the confidentiality of her Private Information and relied on Defendant to keep her Private Information confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

35.     On or about March 20, 2025, Plaintiff received OrthoMind's notice of the Data Breach ("Notice Letter") informing that her Private Information, including her full name, date of birth, and PHI, was accessed and exposed to unauthorized hackers in the Data Breach.

36.     As a result of the Data Breach, and at the direction of Defendant' Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Notice, changing passwords and resecuring her own computer network, and contacting companies regarding suspicious activity on his accounts. Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

37.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling her Private Information, which has been compounded by the fact that Defendant still have not fully informed her of key details about the Data Breach's occurrence.

38.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

39.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

40.    In the instant that her Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff suffered injury from a loss of privacy.

41.    Plaintiff suffered actual injury the moment her Private Information was compromised and stolen by cyber criminals in the Data Breach.

42.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information, in combination with her name, being placed in the hands of unauthorized third parties/criminals. As a result of the Data Breach, Plaintiff is at a

present risk and will continue to be at increased risk of identity theft and fraud for her lifetime.

43.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant' possession, is protected and safeguarded from future breaches.

***Defendant OrthoMinds, LLC***

44.    Defendant OrthoMinds provides services to orthodontic practices to manage their patients, insurance, billing, and communications.  Defendant's services also include insurance and collection services, cloud access from various devices, digital referrals, online patient forms, patient management, and more.[4]

45.    The exceedingly vague Notice does not provide any details about the Data Breach, stating only that it "determined that files and folders stored on certain databases may have been accessible to others outside of our organization"[5]

## CLASS ACTION ALLEGATIONS

46.    Representative Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on behalf of Representative Plaintiffs and the following Class:

### Nationwide Class:

---

[4] https://paya.com/pg-cs/orthominds
[5] https://ago.vermont.gov/sites/ago/files/documents/2025-03-20%20OrthoMinds%20Data%20Breach%20Notice%20to%20Consumers.pdf

All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach discovered by Defendant in November 2024.

**California SubClass:**

All individuals residing in the State of California whose Private Information was exposed to unauthorized third parties as a result of the Data Brech discovered by Defendant in November 2024.

47.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

48.    In the alternative, Representative Plaintiffs may request additional subclasses as necessary based on the types of Private Information that were compromised.

49.    Representative Plaintiffs reserve the right to amend the above Class definitions or to propose other subclasses in subsequent pleadings and motions for class certification.

50.    This action has been brought and may properly be maintained as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and membership of the proposed Class is readily ascertainable.

    a.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the thousands of individuals. Membership in the Class will be determined by analysis of Defendant's records.

    b.    Commonality: Representative Plaintiffs and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    1)    Whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their Private Information;

    2)    Whether Defendant acted negligently in connection with the collection, storage, monitoring and protection of Representative Plaintiffs and Class Members' Private Information;

    3)    Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

4)   Whether the Data Breach was foreseeable to Defendant given the warnings in the Healthcare Industry, regarding the risk of data breaches;

5)   Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

6)   Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

7)   Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

8)   Whether Defendant adequately, promptly and accurately informed Representative Plaintiffs and Class Members that their Private Information had been compromised;

9)   How and when Defendant actually learned of the Data Breach;

10)  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the Private Information of Representative Plaintiffs and Class Members;

11)  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

12)  Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiffs' and Class Members' Private Information;

16

13) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

14) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.    <u>Typicality</u>: Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.    <u>Adequacy of Representation</u>: Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in their entirety. Representative Plaintiffs anticipate no management difficulties in this litigation.

e.    <u>Superiority of Class Action</u>: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of

lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

51.    Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

52.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly. Representative Plaintiffs' challenge of these policies and procedures hinges on Defendant's conduct concerning the Classes in their entirety, not on facts or law applicable only to Representative Plaintiffs.

53.    Unless a Class-wide injunction is issued, Defendant may continue to fail to secure Class Members' PHI/PII properly, and Defendant may continue to act unlawfully, as set forth in this Complaint.

54.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Fed. R. Civ. P. Rule 23(b)(2).

**COMMON FACTUAL ALLEGATIONS**

*The Data Breach*

55.    During the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data including, but not limited to patients' Private Information, including full names, date of birth, medical information, and other sensitive information. Representative Plaintiffs were among the individuals whose data was accessed in the Data Breach.

56.    According to Defendant, the Data Breach occurred when others outside of the organization gained access to files and folders in certain databases.

57.    Defendant still fails to disclose the true size of the Data Breach, refusing to provide the number of affected victims.

58.    According to the "Notice of Data Breach" that Defendant mailed to Representative Plaintiffs and Class Members, OrthoMinds discovered on November

2024 that "others outside of the organization gained access to files and folders in certain databases between November 17, 2024 through November 27, 2024."

59.    In other words, an unauthorized actor had access to the files and folders for almost four months without the account being secured or the Data Breach being discovered.

60.    However, without further explanation, in its notice letter, Defendant claims that it is "implementing additional technical security measures designed to prevent similar future incidents."

### *Defendant's Failed Response to the Data Breach*

61.    Months after Defendant claims to have discovered the Data Breach, Defendant began sending the Notice to persons whose Private Information Defendant confirmed was compromised because of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

62.    The Notice included, *inter alia*, that Defendant had learned of the Data Breach in November 2024 and had taken steps to respond. But the Notice lacked sufficient information on how the breach occurred, what safeguards have been taken since then to safeguard further attacks, and/or where the information hacked exists today.

63.    The unauthorized third-party cybercriminals gained access to Representative Plaintiffs' and Class Members' Private Information undoubtedly

with the intent of misusing it, including marketing and selling Representative Plaintiffs' and Class Members' Private Information.

64.    Defendant had and continue to has obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Representative Plaintiffs' and Class Members' Private Information confidential and to protect such Private Information from unauthorized access.

65.    Representative Plaintiffs and Class Members were required to provide their Private Information to Defendant to receive healthcare, and as part of providing healthcare Defendant created, collected, and stored Representative Plaintiffs' and Class Members' Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

66.    Despite this, even today, Representative Plaintiffs and Class Members remain in the dark regarding what data was stolen, the particular malware used, and what steps are being taken to secure their Private Information in the future.

67.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information, and the modus operandi of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by

criminals intending to utilize the Private Information for identity theft crimes—e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims

68.     In addition to being made available for sale on the dark web, Representative Plaintiffs' and Class Members' Private Information may also be sold to companies that will use the detailed Private Information for targeted marketing without Representative Plaintiffs' and/or Class Members' approval.

69.     Because Defendant has failed to fully disclose the scope of the Data Breach and remedial measures taken, Representative Plaintiffs and Class Members are left to further speculate as to the full impact of the Data Breach and how Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

***Defendant Collected/Stored Representative Plaintiffs' and Class Members' Private Information***

70.     Defendant acquired, collected, stored, and assured reasonable security over Representative Plaintiffs' and Class Members' Private Information.

71.     As a condition of its relationship with Representative Plaintiffs and Class Members, Defendant required that Representative Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential Private

Information. Defendant, in turn, stored that information on Defendant' system that was ultimately affected by the Data Breach.

72.    By obtaining, collecting, and storing Representative Plaintiffs' and Class Members' PHI/PII, Defendant assumed legal and equitable duties over the PHI/PII and knew or should have known that it was responsible for protecting Representative Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

73.    Representative Plaintiffs and Class Members have taken reasonable steps to maintain their Private Information's confidentiality. Representative Plaintiffs and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

74.    Defendant could have prevented the Data Breach, which began as early as November 2024, by properly securing and encrypting and/or more securely encrypting its servers, generally, as well as Representative Plaintiffs' and Class Members' Private Information.

75.    Defendant's negligence in safeguarding Representative Plaintiffs' and Class Members' Private Information is exacerbated by repeated warnings and alerts

directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

76.   The   healthcare   industry   has   experienced   many   high-profile cyberattacks in the last several years preceding this Complaint's filing. Cyberattacks, generally, have become increasingly more common. More healthcare data breaches were reported in 2020 than in any other year, showing a 25% increase.[6] According to the HIPAA Journal, the largest healthcare data breaches were reported in April 2021.[7]

77.   For example, Universal Health Services experienced a cyberattack on September 29, 2020 similar to the attack on Defendant. As a result of this attack, Universal Health Services suffered a four-week outage of its systems which caused as much as $67 million in recovery costs and lost revenue.[8] Similarly, in 2021, Scripps   Health   suffered   a   cyberattack,   which   effectively   shut   down   critical healthcare services for a month and left numerous patients unable to speak to their

---

[6]   https://www.hipaajournal.com/2020-healthcare-data-breach-report/ (last accessed July 24, 2023).
[7]   https://www.hipaajournal.com/april-2021-healthcare-data-breach-report/ (last accessed July 24, 2023).
[8]   https://www.prnewswire.com/news-releases/universal-health-services-inc-reports-2020-fourth-quarter-and-full-year-financial-results-and-2021-full-year-earnings-guidance-301236075.html/ (last accessed July 24, 2023).

physicians or access vital medical and prescription records.[9] University of San Diego Health suffered a similar attack a few months later.[10]

78.    Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[11]

79.    The HIPAA Journal article explains that patient records, like those stolen from Defendant, are "often processed and packaged with other illegally obtained data to create full record sets (full) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other criminals, which "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[12]

---

[9]    https://www.nbcsandiego.com/news/local/scripps-health-employees-regaining-access-to-internal-systems-hit-by-cyberattack-2/2619540/ (last accessed July 24, 2023).
[10]    https://www.nbcsandiego.com/news/local/data-breach-at-uc-san-diego-health-some-employee-email-accounts-impacted/2670302/ (last accessed July 24, 2023).
[11]    *Editorial: Why Do Criminals Target Medical Records,* HIPAA J. (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/
[12]    *Id.*

80.     Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and the U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully ward off a potential attack.

81.     Due to the high-profile nature of these breaches and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in the healthcare industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack.

82.     And yet, despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiffs' and Class Members' PHI/PII from being compromised.

***Defendant Had a Duty to Protect Representative Plaintiffs' and Class Members' Stolen Information***

83.     In failing to adequately secure Representative Plaintiffs' and Class Members' sensitive data, Defendant breached duties it owed Representative Plaintiffs and Class Members under statutory and common law. Under HIPAA, health insurance providers and business associates have an affirmative duty to keep patients' protected health information private. As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard

Representative Plaintiffs' and Class Members' data. Moreover, Representative Plaintiffs and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also had an implied duty to safeguard their data, independent of any statute.

84.    Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

85.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

86.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

87.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

88.    "Electronic protected health information" is "individually identifiable health information […] that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

89.    HIPAA's Security Rule requires Defendant to do the following:

    a.  Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.  Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.  Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.  Ensure compliance by its workforce.

90.    HIPAA also requires Defendant to "review and modify the security measures implemented […] as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

91.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

92.     Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

93.     According to the FTC, the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PHI/PII.

94.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that companies should:

        a.     protect the sensitive consumer information that they keep;

29

     b.     properly dispose of PHI/PII that is no longer needed;

     c.     encrypt information stored on computer networks;

     d.     understand their network's vulnerabilities; and

     e.     implement policies to correct security problems.

95.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

96.    The FTC recommends that companies not maintain information longer than is necessary for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network and verify that third-party service providers have implemented reasonable security measures.

97.    The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

98.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PHI/PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

99.    In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected Representative Plaintiffs' and Class Members' PHI/PII.

100.    Defendant owed a duty to Representative Plaintiffs and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that all PHI/PII in its possession was adequately secured and protected.

101.    Defendant owed a duty to Representative Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect all PHI/PII in its possession, including not sharing information with other entities who maintain sub-standard data security systems.

31

102.    Defendant owed a duty to Representative Plaintiffs and Class Members to implement processes that would immediately detect a breach of its data security systems in a timely manner.

103.    Defendant owed a duty to Representative Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

104.    Defendant owed a duty to Representative Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII from theft, because such an inadequacy would be a material fact in the decision to entrust this PHI/PII to Defendant.

105.    Defendant owed a duty of care to Representative Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

106.    Defendant owed a duty to Representative Plaintiffs and Class Members to encrypt and/or more reliably encrypt Representative Plaintiffs' and Class Members' PHI/PII and monitor user behavior and activity to identify possible threats.

***The Sensitive Information Stolen in the Data Breach Is Highly Valuable***

107.    It is well known that PHI/PII, including Social Security numbers and health records in particular, is a valuable commodity and a frequent, intentional

target of cybercriminals. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

108.   Individuals place a high value not only on their PHI/PII but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight the impact of identity theft.

109.   While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a lot of sensitive information (e.g., patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground Internet websites. Unsurprisingly, the healthcare industry is at high risk and is acutely affected by cyberattacks, like the Data Breach here.

110.   The high value of PHI/PII to criminals is evidenced by the prices they will pay for it through the dark web. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to

$200.[13] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[15]

111.   Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[16] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[17] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[18]

112.   These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. For example, it

---

[13]  *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:
https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 24, 2023).

[14]  *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-
personal-information-is-selling-for-on-the-dark-web/ (last accessed July 24, 2023).

[15]  *In the Dark*, VPNOverview, 2019, *available at*:
https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 24, 2023).

[16]  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/ (last accessed July 24, 2023).

[17]  https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last accessed July 24, 2023).

[18]  https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches/ (last accessed July 24, 2023).

is believed that certain PHI/PII compromised in the 2017 Experian data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant.

113.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government-issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

114.    Identity thieves can use PHI/PII, such as that of Representative Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate various crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

115.   The ramifications of Defendant's failure to secure Representative Plaintiffs' and Class Members' PHI/PII are long-lasting and severe. Once PHI/PII is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the reason cybercriminals stole the PHI/PII of Representative Plaintiffs and Class Members is to engage in identity theft or to sell it to other criminals who will purchase the PHI/PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

116.   Individuals, like Representative Plaintiffs and Class Members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and are likened to accessing DNA for hacker's purposes.

117.   Data breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Representative Plaintiffs and Class Members cannot obtain new numbers unless they become victims of Social Security misuse.

118.   The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old

number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same."[19]

119.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

120.    The harm to Representative Plaintiffs and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," more than identity

---

[19]    *Identity Theft and Your Social Security Number*, SSA, No. 05-10064 (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Apr. 18, 2023).
[20]    *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed July 24, 2023).

thefts involving banking and finance, the government, and the military or education.[21]

121.   "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[22]

122.   When cybercriminals access financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiffs and Class Members.

123.   A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[23] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft

---

[21]   Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed July 24, 2023).

[22]   *Id.*

[23]   See Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed July 24, 2023).

victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[24]

124.   And data breaches are preventable.[25] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[26] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."[27]

125.   Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. Appropriate information security controls, including encryption, must be implemented and enforced rigorously and disciplined so that a *data breach never occurs*.[28]

---

[24]   *Id.*; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed July 24, 2023).

[25]   Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)

[26]   *Id.* at 17.

[27]   *Id.* at 28.

[28]   *Id.*

126.    Here, Defendant knew of the importance of safeguarding PHI/PII and of the foreseeable consequences that would occur if Representative Plaintiffs' and Class Members' PHI/PII was stolen, including the significant costs that would be placed on Representative Plaintiffs and Class Members because of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols was necessary to fulfill its statutory and common law duties to Representative Plaintiffs and Class Members. Therefore, its failure to do so is intentional, willful, reckless, and/or grossly negligent.

127.    Moreover, Defendant's offer of complimentary access to 12 months of credit monitoring and advice to Representative Plaintiffs and Class Members to remain vigilant against identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months squarely places the burden on Representative Plaintiffs and Class Members, rather than on Defendant, to monitor and report suspicious activities to law enforcement. In other words, Defendant expects Representative Plaintiffs and Class Members to protect themselves from its tortious acts resulting from the Data Breach. Rather than automatically enrolling Representative Plaintiffs and Class Members in credit monitoring services upon discovery of the Data Breach, Defendant merely sent instructions to Representative Plaintiffs and Class Members about actions they could affirmatively take to protect themselves.

128.    These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Representative Plaintiffs' and Class Members' PHI/PII.

129.    Defendant disregarded the rights of Representative Plaintiffs and Class Members by, *inter alia*: (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequate security protocols and training practices in place to safeguard Representative Plaintiffs' and Class Members' PHI/PII, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

## CHOICE OF LAW FOR NATIONWIDE CLAIMS

130.    The State of Georgia has a significant interest in regulating the conduct of businesses operating within its borders. Georgia, which seeks to protect the rights and interests of Georgia and all residents and citizens of the United States against a company headquartered and doing business in Georgia, has a greater interest in the

nationwide claims of Plaintiffs and Nationwide Class members than any other state and is most intimately concerned with the claims and outcome of this litigation.

131.    The principal place of business of OrthoMinds, LLC, located at 6110 McFarland Station Drive, Suite 604, Alpharetta, GA 30004, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its data security functions and major policy, financial, and legal decisions. As such, OrthoMinds' response to the Data Breach occurred in Georgia, and corporate decisions surrounding such response were made from and in Georgia.

132.    Defendant's breaches of duty to Representative Plaintiffs and Nationwide Class members emanated from Georgia.

133.    Application of Georgia law to the Nationwide Class with respect to Representative Plaintiffs' and Class Members' claims is neither arbitrary nor fundamentally unfair because Georgia has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Representative Plaintiffs and the Nationwide Class.

134.    Under Georgia's choice of law principles, which are applicable to this action, the common law of Georgia applies to the nationwide common law claims of all Nationwide Class members. Additionally, given Georgia's significant interest in regulating the conduct of businesses operating within its borders, Georgia's

Uniform Deceptive Trade Practices Act may be applied to non-resident consumer plaintiffs.

## CAUSES OF ACTION

### COUNT ONE
**Negligence**
**(On behalf of the Nationwide Class)**

135.    Each and every allegation of paragraphs 1 – 134 is incorporated in this Count with the same force and effect as though fully set forth herein.

136.    At all times herein relevant, Defendant owed Representative Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Representative Plaintiffs' and Class Members' Private Information on its computer systems and networks.

137.    Among these duties, Defendant was expected:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in its possession;

    b.    to protect Representative Plaintiffs' and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.    to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and

     d.    to promptly notify Representative Plaintiffs and Class Members of any data breach, security incident or intrusion that affected or may have affected their Private Information.

138.  Defendant knew or should have known that the Private Information was sensitive, private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care to not subject Representative Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

139.  Defendant knew or should have known of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

140.  Defendant knew or should have known that its data systems and networks did not adequately safeguard Representative Plaintiffs' and Class Members' Private Information.

141.  Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Representative Plaintiffs and Class Members had entrusted to it.

142.  Defendant breached its duties to Representative Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

143.    Because Defendant knew that a breach of its systems could damage numerous individuals, including Representative Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information stored thereon.

144.    Representative Plaintiffs' and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant could protect its systems and the Private Information it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiffs and Class Members.

145.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Representative Plaintiffs, and/or the remaining Class Members.

146.    Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

      a.     by failing to provide fair, reasonable and/or adequate computer systems and data security practices to safeguard Representative Plaintiffs' and Class Members' Private Information;

b.    by failing to timely and accurately disclose that Representative Plaintiffs' and Class Members' Private Information had been improperly acquired or accessed;

c.    by failing to adequately protect and safeguard Private Information by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured Private Information;

d.    by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Representative Plaintiffs' and Class Members' Private Information, misuse the Private Information and intentionally disclose it to others without consent;

e.    by failing to adequately train its employees not to store Private Information longer than absolutely necessary;

f.    by failing to consistently enforce security policies aimed at protecting Representative Plaintiffs' and Class Members' Private Information;

g.    by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h.    by failing to encrypt Representative Plaintiffs' and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

147.   Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

148. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harm and damages (as alleged above).

149. The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Representative Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

150. Defendant breached its duty to notify Representative Plaintiffs and Class Members of the unauthorized access by waiting four or more months after learning of the Data Breach to notify Representative Plaintiffs and Class Members and then by failing and continuing to fail to provide Representative Plaintiffs and Class Members sufficient information regarding the Data Breach. To date, Defendant has not provided sufficient information to Representative Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiffs and Class Members.

151. Further, by explicitly failing to provide timely and clear notification of the Data Breach to Representative Plaintiffs and Class Members, Defendant prevented Representative Plaintiffs and Class Members from taking meaningful,

proactive steps to secure their Private Information and access their medical records and histories.

152.   There is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiffs' and Class Members' Private Information and the immediate injury and harm (or risk of imminent harm suffered) by Representative Plaintiffs and Class Members. Representative Plaintiffs' and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing and maintaining appropriate security measures.

153.   Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

154.   The damages Representative Plaintiffs and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

155.   Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

156. Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiffs and Class Members.

157. Defendant's violation of 15 U.S.C. § 45 constitutes negligence *per se.* Defendant also violated the HIPAA Privacy and Security rules, which constitutes negligence *per se*.

158. As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their Private Information is used, (iii) the compromise, publication, and/or theft of their Private Information, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) lost continuity in relation to

their healthcare, (vii) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiffs' and Class Members' Private Information in its continued possession, and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members.

159.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

160.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members suffered injury and harm the moment cybercriminals accessed their Private Information.

161.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members suffered and will continue to suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further

unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession.

## COUNT TWO
### Negligence *Per Se*
### (On behalf of the Nationwide Class)

162.  Each and every allegation of paragraphs 1 – 134 is incorporated in this Count with the same force and effect as though fully set forth herein.

163.  HIPAA requires that covered entities and business associates "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information" and "must reasonably safeguard protected health information from any intentional or unintentional use or disclosure…." 45 CFR § 164.530I.

164.  The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 requires HIPAA covered entities and their business associates to provide notification to the United States Department of Health and Human Services, prominent media outlets following a data breach or any breach of unsecured protected health information without unreasonable delay and in no event later than 60 days after discovery of a data breach.

165.  Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits companies such as Defendant from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce,"

including failing to use reasonable measures to protect Private Information. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

166.   In addition to the FTC rules and regulations and state law, other states and jurisdictions where victims of the Data Breach are located require that Defendant protect Private Information from unauthorized access and disclosure and timely notify the victim of a data breach.

167.   Defendant violated HIPAA and FTC rules and regulations obligating companies to use reasonable measures to protect Private Information by failing to comply with applicable industry standards and by unduly delaying reasonable notice of the actual breach. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a Data Breach and the exposure of Representative Plaintiffs' and Class members' highly sensitive Private Information.

168.   Each of Defendant's statutory violations of HIPAA, Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitute negligence *per se*.

169.   Representative Plaintiffs and Class Members are within the category of persons HIPAA and the FTC Act were intended to protect.

170.   The harm that occurred because of the Data Breach described herein is the type of harm HIPAA and the FTC Act were intended to guard against.

171.   As a direct and proximate result of Defendant's negligence *per se*, Representative Plaintiffs and Class Members have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Private Information in Defendant's possession and are entitled to damages in an amount to be proven at trial.

## COUNT THREE
### Breach of Implied Contract
### (On behalf of the Nationwide Class)

172.   Each and every allegation of paragraphs 1 – 134 is incorporated in this Count with the same force and effect as though fully set forth herein.

173.   Through its course of conduct, Defendant, Representative Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiffs' and Class Members' Private Information and to timely and accurately notify Representative Plaintiffs and Class Members that their information had been breached and compromised.

174.   Defendant required Representative Plaintiffs and Class Members to provide and entrust their Private Information as a condition of obtaining Defendant's services.

175.    Defendant acquired, stored, and maintained the Private Information of Representative Plaintiffs and the Class that it received either directly from them or from its orthodontic clients.

176.    Defendant solicited and invited Representative Plaintiffs and Class Members to provide their Private Information as part of Defendant's regular business practices. Representative Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

177.    As a condition of being Defendant's direct patients, Representative Plaintiffs and Class Members provided and entrusted their Private Information to Defendant. In so doing, Representative Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiffs and Class Members if their data had been breached and compromised or stolen.

178.    Representative Plaintiffs and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

179.    When Representative Plaintiffs and Class Members paid money and provided their Private Information to their orthodontists, either directly or indirectly, in exchange for goods or services, they entered into implied contracts with their providers and their business associates, including Defendant, and intended and

understood that Private Information would be adequately safeguarded as part of that service.

180.    A meeting of the minds occurred when Representative Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendant, in exchange for, amongst other things, the protection of their Private Information.

181.    Representative Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

182.    The implied promise of confidentiality includes consideration beyond those pre-existing general duties owed under the FTC Act, HIPAA, or other state of federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

183.    The implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (b) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized medical purpose; (c) restricting access to qualified and trained agents; (d) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (e) applying or requiring proper encryption; (f) multifactor

authentication for access; and (g) other steps to protect against foreseeable data breaches.

184.    Defendant's implied promises to safeguard Plaintiffs' and Class Members' Private information are also evidenced by representations in forms Representative Plaintiffs completed, Defendant's HIPAA Policy, and the Privacy Policy of Paya, Inc., with whom Defendant partners.[29]

185.    Representative Plaintiffs and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

186.    Representative Plaintiffs and Class Members have fully performed their obligations under the implied contracts with Defendant.

187.    Defendant breached the implied contracts it made with Representative Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised because of the Data Breach.

188.    As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members have suffered and will continue to suffer: (i) ongoing, imminent and impending threat of identity theft

---

[29] OrthoMinds partners with Paya, Inc., whose Privacy Policy is found at Privacy Policy - Paya, a Nuvei company. When searching for OrthoMinds' Privacy Policy, the internet redirects you to Paya's Privacy Policy. OrthoMinds, LLC's Privacy Policy is no longer available. *See* orthominds.com/privacy-policy.aspx.

crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

189.   As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or althernatively, nominal damages.

## COUNT FOUR
### Breach of Fiduciary Duty
### (On behalf of the Nationwide Class)

190.   Each and every allegation of paragraphs 1 – 134 is incorporated in this Count with the same force and effect as though fully set forth herein.

191.   Representative Plaintiffs and and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

192.   The Private Information of patient-Representative Plaintiffs and Class Members was disclosed to Defendant. That Private Information is akin to the health

information that was communicated to their orthodontic providers when receiving orthodontic care.

193.   As the business associate of its orthodontic clients, and recipient of Representative Plaintiffs' and Class Members' Private Information, Defendant has a fiduciary relationship with Representative Plaintiffs and Class Members.

194.  In light of the special relationship between Defendant and Representative Plaintiffs and Class Members, whereby Defendant became the guardian of Representative Plaintiffs' and Class Members'  Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information to act primarily for Representative Plaintiff and Class Members, (i) for the safeguarding of Representative Plaintiffs' and Class Members' Private Information, (ii) to timely notify Representative Plaintiffs and Class Members of a data breach and disclosure, and (iii) to maintain complete and accurate records of what information (and where) Defendant did have and continue to store.

195.   Defendant has a fiduciary duty to act for the benefit of Representative Plaintiffs and Class Members upon matters within the scope of their relationship with its customers' patients and former patients—in particular, to keep their Private Information secure.

196.    Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

197.    Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Representative Plaintiffs' and Class Members' Private Information.

198.    Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to timely notify and/or warn Representative Plaintiffs and Class Members of the Data Breach.

199.    Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by otherwise failing to safeguard Representative Plaintiffs' and Class Members' Private Information.

200.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their Private Information, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information, (iv) lost opportunity costs associated with effort expended and the loss of productivity

addressing and attempting to mitigate the actual and future consequences of the Data

Breach, including but not limited to efforts spent researching how to prevent,

contest, and recover from identity theft, (v) the continued risk to their Private

Information, which remains in Defendant's possession and is subject to further

unauthorized disclosures so long as Defendant fails to undertake appropriate and

adequate measures to protect the Private Information in its continued possession,

(vi) future costs in terms of time, effort, and money that will be expended as result

of the Data Breach for the remainder of the lives of Representative Plaintiffs and

Class Members, and (vii) the diminished value of Defendant's services they

received.

201.   As a direct and proximate result of Defendant's breach of its fiduciary

duties, Representative Plaintiffs and Class Members have suffered and will continue

to suffer other forms of injury and/or harm, and other economic and non-economic

losses to be proven at trial.

**COUNT FIVE**
**Unjust Enrichment**
**(On behalf of the Nationwide Class)**

202.   Each and every allegation of paragraphs 1 – 134 is incorporated in this

Count with the same force and effect as though fully set forth herein.

203.   Representative Plaintiffs and the Class Members bring this Count in the

alternative to their breach of implied contract claim.  Plaintiffs and Class Members

have an interest, both equitable and legal, in their Private Information that was collected, stored, and maintained by Defendant and that was ultimately compromised in the Data Breach.

204. Defendant funds its data-security measures entirely from its general revenue, including payments made by or on behalf of Representative Plaintiffs and Class Members.

205. As such, a portion of the payments made by or on behalf of Representative Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendant.

206. Representative Plaintiffs and Class Members conferred a monetary benefit upon Defendant in the form of monies paid for orthodontic services, a portion of which was reasonably paid for the storage and maintenance of Representative Plaintiffs' and Class Members' Private Information in Defendant' systems. Defendant's business model would not exist save for the need to ensure the security of Representative Plaintiffs' and Class Members' Private Information in order to provide its innovative payment solutions to its orthodontic clients.

207. Specifically, they purchased goods and services from Defendant and/or its agents and provided Defendant with their Private Information. In exchange, Representative Plaintiffs and Class Members should have received from Defendant

the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

208.    Defendant knew that Representative Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Representative Plaintiffs and Class Members for business purposes.

209.    Defendant enriched itself by saving the costs it reasonably should have expended in data-security measures to secure Representative Plaintiffs' and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Representative Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. On the other hand, Representative Plaintiffs and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its profits over the requisite security.

210.    The relationship between Defendant and Representative Plaintiffs and Class Members is not attenuated, as Representative Plaintiffs and Class Members had a reasonable expectation that the security of their Private Information would be maintained when they provided their Private Information to Defendant and its orthodontic clients.

211.   Defendant benefited by the conferral upon it of the Private Information pertaining to Representative Plaintiffs and the Class Members and by its ability to retain, use, and profit from that information. Defendant understood and valued this benefit.

212.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Representative Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

213.   Defendant failed to secure Representative Plaintiffs' and Class Members' Private Information, and, therefore, did not provide full compensation for the benefit of Representative Plaintiffs and Class Members.

214.   Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

215.   If Representative Plaintiffs and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

216.   Representative Plaintiffs and Class Members have no remedy at law.

217.   As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of

opportunity to determine how their Private Information is used, (iii) the compromise, publication, and/or theft of their Private Information, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information, (v) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members.

218. As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

219. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Representative Plaintiffs and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be

compelled to refund the amounts that Representative Plaintiffs and Class Members overpaid for Defendant's services.

## COUNT SIX
### Invasion of Privacy/Intrusion Upon Seclusion
### (On behalf of the Nationwide Class)

220.   Each and every allegation of paragraphs 1 – 134 is incorporated in this Count with the same force and effect as though fully set forth herein.

221.   The State of Georgia recognizes the tort of Intrusion into Seclusion, and has adopted the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

222.   Defendant required that Representative Plaintiffs and Class Members provide Private Information to Defendant and its affiliates and Representative Plaintiffs and Class Members wanted and expected that Private Information to remain private and non-public.

223.   Plaintiffs and Class Members had a legitimate expectation of privacy in their Private Information and were entitled to Defendant's protection of this Private Information in its possession against disclosure to unauthorized third parties.

224.   Defendant's intentional conduct of collecting, storing, and using Representative Plaintiffs' and Class Members' Private Information is akin to surveillance of Private Information.

225.   Defendant actively participated in the intrusion into Representative Plaintiffs' and Class Members' affairs in choosing to make inferior and inadequate data security choices that failed to protect Representative Plaintiffs' and Class Members' Private Information and allowed unauthorized and unknown third parties to access the Private Information of Representative Plaintiffs and Class Members.

226.   Defendant owed a duty to its clients' patients, including Plaintiffs and Class Members, to keep their Private Information confidential and secure.

227.   Defendant failed to protect Plaintiffs' and Class Members' Private Information and instead exposed it to unauthorized persons, cybercriminal hackers, which on information and belief has made or imminently will make the Private Information publicly available and disseminated it to thousands of people, including through publishing the data on dark web leak sites, where cybercriminals go to find their next identity theft and extortion victims.

228.   Defendant allowed unauthorized third parties access to and examination of the Private Information of Plaintiffs and Class Members, by way of Defendant's failure to protect the Private Information through reasonable data security measures.

229.   The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiffs and Class Members is highly offensive to a reasonable person and represents an intrusion upon Plaintiffs' and Class Members' seclusion as well as a public disclosure of private facts.

230.   The intrusion was into a place or thing, which was private and is entitled to be private—sensitive and confidential information including private medical histories and financial information.

231.   Representative Plaintiffs and Class Members disclosed their Private Information to Defendant as a condition of and in exchange for receiving Defendant's clients' healthcare services, but privately with an intention that the Private Information would be kept confidential and protected from unauthorized disclosure. Representative Plaintiffs and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization, given Defendant' obligations to that effect.

232.   Subsequent to the intrusion, Defendant permitted Representative Plaintiffs' and Class Members' data to be stolen and, imminently or already, published online to countless cybercriminals whose mission is to misuse such information, including through identity theft and extortion.

233.   The Data Breach constitutes an intentional or reckless interference by Defendant with Representative Plaintiffs' and Class Members' interests in solitude

or seclusion, as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person—including but not limited to private and personal medical diagnosis and treatment information.

234.   Defendant acted with a knowing state of mind when it permitted the Data Breach to occur, because it had actual knowledge that its information security practices were inadequate and insufficient to protect Representative Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

235.   Defendant acted with reckless disregard for Representative Plaintiffs' and Class Members' privacy when it allowed improper access to its systems containing Representative Plaintiffs' and Class Members' Private Information without protecting said data from the unauthorized disclosure, or even encrypting such information.

236.   Defendant was aware of the potential of a data breach and failed to adequately safeguard its network systems or implement appropriate policies to prevent the unauthorized release of Representative Plaintiffs' and Class Members' Private Information to cybercriminals.

237.   Because Defendant acted with this knowing state of mind, it had notice and knew that its inadequate and insufficient information security practices would cause injury and harm to Representative Plaintiffs and Class Members.

238.   As a direct and proximate result of Defendant's acts and omissions set forth above, Representative Plaintiffs' and Class Members' Private Information was disclosed to third parties without authorization, causing Representative Plaintiffs and Class Members to suffer injuries and damages including, without limitation, (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) emotional distress due to their Private Information's publication on the dark web; and (e) the continued and certainly increased risk to their Private Information, which remains in Defendant's possession in unencrypted form and subject to further unauthorized disclosures, so long as Defendant fails to undertake adequate measures to protect it.

239.   Unless and until enjoined and restrained, Defendant's wrongful conduct will continue to cause irreparable injury to Representative Plaintiffs and Class Members in that the Private Information Defendant maintain can be viewed, distributed, and used by unauthorized persons for their lifetime. There is no adequate remedy at law in that a judgment for damages will not end the invasion of privacy.

**COUNT SEVEN**
**Violation of O.C.G.A. § 13-6-11**
**(*On behalf of the Nationwide Class*)**

240.   Each and every allegation of paragraphs 1 – 134 is incorporated in this

Count with the same force and effect as though fully set forth herein.

241.    Defendant through its actions alleged and described herein acted in bad faith, was stubbornly litigious, or caused Representative Plaintiffs and Class Members unnecessary trouble and expense with respect to the events underlying this litigation.

242.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to implement and use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

243.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information that it obtained and stored and the foreseeable consequences of a data breach.

244.    Defendant also has a duty under the Georgia Constitution ("the Constitution") which contains a Right to Privacy clause, Chapter 1, Article 1, to protect its users' Private Information. The Constitution states "no person shall be deprived of life, liberty, or property except by due process of law." Moreover, the Constitution identifies certain invasions of privacy, including the Public Disclosure

70

of Private Life which prohibits the public disclosure of private facts.

245.   This duty has been recognized by the Georgia Supreme Court in the Restatement of the Law of Torts (Second) § 652A which specifically recognized four common law invasion of privacy claims in Georgia, which include (1) appropriation of likeness; (2) intrusion on solitude or seclusion; (3) public disclosure of private facts; and (4) false light.

246.   Defendant's affirmative implementation of inadequate data security measures, its failure to resolve vulnerabilities and deficiencies, and its abdication of its responsibility to reasonably protect data it required Representative Plaintiffs and Class Members to provide and stored on its own servers and databases constitutes a violation of the Constitution and the Restatement of the Law of Torts (Second).

247.   Defendant knew or should have known that it had a responsibility to protect the Private Information it required Representative Plaintiffs and Class Members to provide and it stored, that it was entrusted with this Private Information, and that it was the only entity capable of adequately protecting the Private Information on its systems and databases.

248.   Despite that knowledge, Defendant abdicated its duty to protect the Private Information it required Representative Plaintiffs and Class Members to provide and that Defendant stored.

249.   As a direct and proximate result of Defendant's actions, Representative

71

Plaintiffs' and the Class Members' Private Information was accessed and stolen by cybercriminals. The Data Breach was a direct consequence of Defendant's abrogation of its data security responsibilities and its decision to employ knowingly deficient data security measures that knowingly left the Private Information unsecured. Had Defendant adopted reasonable data security measures, it could have prevented the Data Breach.

250.   As further described above, Representative Plaintiffs and the Class Members have been injured and suffered losses directly attributable to the Data Breach.

251.   Representative Plaintiffs and Class Members therefore request that their claim for recovery of expenses of litigation and attorneys' fees be submitted to the jury, and that the Court enter a Judgment awarding their expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## COUNT EIGHT
### Georgia Uniform Deceptive Trade Practices Act
### O.C.G.A. §§ 13-1-370, *et seq.*

252.   Each and every allegation of paragraphs 1-134 is incorporated with the same force and effect as though fully set forth herein.

253.   Defendant, Plaintiffs, and Class Members are "persons within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

254.    Defendant engaged in deceptive trade practices in the conduct of its business in violation of O.C.G.A. § 10-1-372(a), which states in pertinent part that it is a deceptive trade practice to:

> (a)(5) Represent[] that goods or services have sponsorship, approval, characteristics, . . . uses, [or] benefits . . . that they do not have;
> (a)(7) Represent[] that goods or services are of a particular standard, quality, or grade . . . if they are of another; or
> (a)(12) Engage[] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

255.    Defendant engaged in deceptive trade practices in violation of the Georgia DTPA, Ga. Code Ann. § 10-1-372(a)(5), (7), and (12), by, among other things:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Representative Plaintiffs' and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b.    Making implied or implicit representations that its data security practices were sufficient to protect Representative Plaintiffs' and Class Members' Private Information. By virtue of accepting Representative Plaintiffs' and Class Members' Private Information from its clients, Defendant implicitly represented that its data security processes was sufficient to safeguard the

Private Information;

c.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

d.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, 42 U.S.C. § 1320d, which was a direct and proximate cause of the Data Breach;

e.    Misrepresenting that it would protect the privacy and confidentiality of Representative Plaintiffs' and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

f.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C.

§ 45 and HIPAA, 42 U.S.C. § 1320d;

g.    Failing to timely and adequately notify Representative Plaintiffs and Class Members of the Data Breach;

h.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Representative Plaintiffs' and Class Members' Private Information; and

i.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, 42 U.S.C. § 1320d.

256.   Past breaches in the health services industry put Defendant on notice that its data security practices was inadequate to safeguard Representative Plaintiffs' and Class Members' Private Information, and Defendant knew or should have known that the risk of a data breach was highly likely.

257.   Because Defendant required Representative Plaintiffs and Class Members to provide their Private Information as a prerequisite to receive orthodontic services from its providers, Representative Plaintiffs and Class Members reasonably expected that Defendant's data security and data storage systems were adequately secure to protect their Private Information.

258.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information.

259.    Defendant intended to mislead Representative Plaintiffs and Class Members and induce them to rely on its misrepresentations and omissions.

260.    Representative Plaintiffs and Class Members relied on Defendant to advise them if its data security and data storage systems was not adequately secure to protect their Private Information.

261.    Representative Plaintiffs and Class Members had no opportunity to make any inspection of Defendant's data security practices or to otherwise ascertain the truthfulness of Defendant's representations and omissions regarding data security, including Defendant's failure to alert Representative Plaintiffs and Class Members that its data security and data storage systems were not adequately secure and, thus, were vulnerable to attack.

262.    Representative Plaintiffs and Class Members relied to their detriment on Defendant's misrepresentations and deceptive omissions regarding its data security practices.

263.    Had Defendant disclosed that its data security and data storage systems were not secure, and thus, vulnerable to attack, Representative Plaintiffs and Class Members would not have entrusted Defendant with their Private Information.

264.   Defendant acted intentionally, knowingly, and maliciously to violate the Georgia UDTPA, and recklessly disregarded Representative Plaintiffs' and Class Members' rights. Other industry data breaches put Defendant on notice that its security and privacy protections were inadequate.

265.   Had Defendant disclosed to Representative Plaintiffs and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant was trusted with sensitive and valuable Private Information regarding thousands of consumers, including Representative Plaintiffs the Class. Defendant accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as maintaining a secure platform for Private Information data, Representative Plaintiffs and the Class acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

266.   As a direct and proximate result of Defendant's unfair and deceptive business practices, Representative Plaintiffs and Class Members suffered ascertainable losses, including but not limited to, a loss of privacy, the loss of the benefit of their bargain, out-of-pocket monetary losses and expenses, the value of

their time reasonable incurred to remedy or mitigate the effects of the Data Breach, the loss of value of their Private Information, the imminent and substantially increased risk of fraud and identity theft, and the need to dedicate future expenses and time to protect themselves against further loss. .

267.    To date, Defendant has not provided sufficient details regarding the full scope of the Data Breach, or any details related to the remedial measures it has taken to improve its data security practices and more fully safeguard Representative Plaintiffs' and Class Members' Private Information from future compromise. As a result, Representative Plaintiffs and Class Members remain uninformed and confused as to the adequacy of Defendant's data security and Defendant's ability to protect the Private Information entrusted to it. Without adequate improvements, Representative Plaintiffs' and Class Members' Private Information remains at an unreasonable risk of future compromise.

268.    Defendant, through its omissions and its Data Breach Notice Letters, continue to represent and imply that its data security measures are adequate to protect consumers' Private Information. Such continued representations and implications, without disclosure of the full scope of the Data Breach or Defendant's subsequent remedial enhancements, places Representative Plaintiffs and Class Members at a future risk of harm, as Representative Plaintiffs and Class Members are not fully informed as to whether Defendant's data security measures have been improved

78

since the Data Breach. By all available measures, Defendant's data security practices and systems have not been adequately improved, and Representative Plaintiffs and Class Members remain at an unreasonable risk from future cyberattacks.

269.    Representative Plaintiffs and the Class are therefore entitled to the injunctive relief sought herein, because, among other things, Defendant continues to retain their Private Information, future cyber-attacks targeting the same data are foreseeable, and Defendant has not provided sufficient notice identifying any remedial measures that will protect the data from future attack. Moreover, absent injunctive relief, Defendant will continue to misrepresent and imply that its data security practices and systems are adequate to protect the Private Information of Representative Plaintiffs and Class Members from future cyberattacks without providing any firm details or basis to support these representations.

270.    The Georgia DTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2).  Defendant willfully engaged in deceptive trade practices knowing them to be deceptive. Defendant knew or should have known that its data security practices were deficient. Defendant was aware that entities responsible for collecting and maintaining large amounts of Private Information are frequent targets of sophisticated cyberattacks. Defendant knew or should have

known that its data security practices were insufficient to guard against those attacks.

271.    The Georgia DTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b). Representative Plaintiffs and the Class are entitled to recover their costs of pursuing this litigation.

272.    Representative Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by the Georgia DTPA, including injunctive relief and attorneys' fees.

## CLAIMS ON BEHALF OF THE CALIFORNIA SUBCLASS

### COUNT NINE
**California Customer Records Act**
**Cal. Civ. Code §§ 1798.80,** *et seq.*

273.    Representative Plaintiffs, individually and on behalf of the California Subclass, repeat and allege Paragraphs 1-134 as if fully alleged herein.

274.    "[T]o ensure that Private Information about California residents is protected," the California legislature enacted the California Customer Records Act, Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Private Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Private Information from unauthorized access, destruction, use, modification, or disclosure."

275. Defendant is a business that owns, maintains, and licenses "Private Information," within the meaning of Cal. Civ. Code § 1798.81.5(d)(1), about Representative Plaintiffs and California Subclass members.

276. Businesses that own, license, or maintain computerized data that includes Private Information are required to notify California residents when their Private Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Private Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82. *Id.*

277. Defendant is a business that owns, licenses, or maintains computerized data that includes Private Information as defined by Cal. Civ. Code § 1798.82(h).

278. Representative Plaintiffs and California Subclass members' Private Information includes "Private Information" as covered by Cal. Civ. Code §§ 1798.81.5(d)(1), 1798.82(h).

279. Because Defendant reasonably believed that Plaintiffs and California Subclass Members' Private Information was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

280.    Defendant failed to disclose the Data Breach in a timely and accurate

manner, within the meaning of the California Customer Records Act.

281.    By failing to disclose the Data Breach in a timely and accurate manner,

Defendant violated Cal. Civ. Code § 1798.82.

282.    As a direct and proximate result of Defendant's violations of the Cal.

Civ. Code §§ 1798.81.5 and 1798.82, Representative Plaintiffs and California

Subclass members suffered damages, as described above.

283.    Representative Plaintiffs and California Subclass members seek relief

under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT TEN**
**California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq***.**

284.    Representative Plaintiffs, individually and on behalf of the California

Subclass, repeat and allege Paragraphs 1-134 as if fully alleged herein.

285.    OrthoMinds, LLC is a "person" as defined by Cal. Bus. & Prof. Code

§ 17201.

286.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")

by engaging in unlawful, unfair, and deceptive business acts and practices.

287.    Defendant' "unfair" acts and "deceptive" practices include:

a.  Defendant failed to implement and maintain reasonable security

82

measures to protect Representative Plaintiffs' and California Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach. Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents.

b. Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), HIPAA, 42 U.S.C. § 1320d, and California's Consumer Records Act (Cal. Civ. Code § 1798.81.5).

c. Defendant's failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

    d.  Engaging in unlawful business practices by violating Cal. Civ. Code §

       1798.82.

288.   Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Customer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, and HIPAA, 42 U.S.C. § 1320d.

289.   Defendant's unlawful, unfair, and deceptive acts and practices include:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Representative Plaintiffs' and California Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiffs' and California Subclass Members' Private Information, including duties imposed by

the FTC Act, 15 U.S.C. § 45, HIPAA, and California's Customer

Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, which was a direct

and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of

Representative Plaintiffs' and California Subclass Members' Private

Information, including by implementing and maintaining reasonable

security measures;

e.  Misrepresenting that it would comply with common law and statutory

duties pertaining to the security and privacy of Representative

Plaintiffs' and California Subclass Members' Private Information,

including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42

U.S.C. § 1320d, and California's Customer Records Act, Cal. Civ.

Code §§ 1798.80, *et seq.*;

f.  Failing to timely and adequately notify Representative Plaintiffs and

California Subclass members of the Data Breach;

g.  Omitting, suppressing, and concealing the material fact that it did not

reasonably or adequately secure Representative Plaintiffs' and

California Subclass members' Private Information; and

h.  Omitting, suppressing, and concealing the material fact that it did not

comply with common law and statutory duties pertaining to the

security and privacy of Representative Plaintiffs' and California

Subclass Members' Private Information, including duties imposed by

the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d., and

California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

290.    Defendant's representations and omissions were material because they
were likely to deceive reasonable consumers about the adequacy of Defendant's data
security and ability to protect the confidentiality of consumers' Private Information.

291.    As a direct and proximate result of Defendant's unfair, unlawful, and
fraudulent acts and practices, Representative Plaintiffs and California Subclass
Members were injured and lost money or property, including the costs passed
through to Defendant, the premiums and/or price received by Defendant for its goods
and services, monetary damages from fraud and identity theft, time and expenses
related to monitoring their financial accounts for fraudulent activity, an increased,
imminent risk of fraud and identity theft, and loss of value of their Private
Information.

292.    Defendant acted intentionally, knowingly, and maliciously to violate
California's Unfair Competition Law, and recklessly disregarded Representative
Plaintiffs' and California Subclass Members' rights. Other data breaches in the

industry put Defendant on notice that its security and privacy protections were inadequate.

293.   Representative Plaintiffs and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## **RELIEF SOUGHT**

**WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of the proposed National Class and California Subclass respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.   That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under Fed. R. Civ. P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Representative Plaintiffs' counsel as Class Counsel;

2.   For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering it to cease and desist from similar unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Representative Plaintiffs and Class Members;

5.      For injunctive relief requested by Representative Plaintiffs, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiffs and Class Members, including but not limited to an Order:

   a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

   c.      requiring Defendant to delete and purge Representative Plaintiffs' and Class Members' PHI/PII unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiffs and Class Members;

   d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiffs' and Class Members' Private Information;

88

e.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant' systems on a periodic basis;

f.    prohibiting Defendant from maintaining Representative Plaintiffs' and Class Members' Private Information on a cloud-based database;

g.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant' network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.    requiring Defendant to conduct regular database scanning and securing checks;

i.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Representative Plaintiffs and Class Members and California Subclass Members;

j.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k.    requiring Defendant to implement, maintain, review and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

l.     requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential PHI/PII to third parties, as well as the steps affected individuals must take to protect themselves.

6.     For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.     For an award of attorney's fees, costs, and litigation expenses, pursuant to O.C.G.A. Section 13-6-11, and as otherwise allowed by law;

8.     For all other Orders, findings and determinations identified and sought in this Complaint.

## JURY DEMAND

Representative Plaintiffs, individually and on behalf of the National Plaintiff Class and California Subclass, hereby demand a trial by jury for all issues triable by jury.

Dated: May 1, 2025                     Respectfully submitted,

By: */s/MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**GIBSON CONSUMER LAW GROUP, LLC**
4279 Roswell Road, Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Jeff Ostrow (*pro hac vice*)

90

**KOPELOWITZ OSTROW P.A.**
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com

Daniel Srourian, Esq. (*pro hac vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Drive Suite 200
Beverly Hills, CA 90210
Telephone:   (213) 474-3800
Facsimile:   (213) 471-4160
daniel@slfla.com

*Counsel for Representative Plaintiffs and the Proposed Class*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing pleading has been prepared with Times New

Roman, 14-point font, in compliance with L.R. 5.1B.

Dated: May 1, 2025

By: */s/MaryBeth V. Gibson*
MaryBeth V. Gibson

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2025, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to all counsel of record in this matter.

By: */s/MaryBeth V. Gibson*
MaryBeth V. Gibson